Our first case this morning is Fisher v. The United States. Ms. Hagley, excuse me. Good morning, and may it please the Court. The issue in this case is whether taxpayers must pay any tax when they sell stock received in a life insurance demutilization. The Court of Federal Claims held that taxpayers didn't have to pay a tax no matter how much gain was at issue because it was impossible in the Court's view to determine how much of the life insurance premiums should be attributed to the voting and liquidation rights. The Court of Federal Claims erred for three basic reasons. Number one, it failed to require the trust to prove that it had paid anything for the voting and liquidation rights. Number two, it erred in applying the Open Transaction Doctrine. Ms. Hagley, you have a very soft and pleasant voice. Could you speak up just a little bit? Sure, I'm sorry, Your Honor. Is this better? That's better. The second error was that the Court should not have applied the Open Transaction Doctrine to the facts of this case. And number three, the final error was that the Court erred in determining that the rights had any more than a de minimis value at the time that they were acquired. With regard to the first issue, the Court of Federal Claims never found that the trust was required to pay for the voting and liquidation rights. It just sort of assumed that because in the Court's view, those rights had value. It was undisputed that Sun Life did not charge for those rights. And it's undisputed that the Sun Life policyholders paid the exact same premiums for a policy with the rights as they did for a policy without the rights. And therefore, the Court of Federal Claims should have determined that all the premiums were being paid for the contract rights and not for the proprietary interests, the voting and liquidation rights. That is how the Code treats all premiums as being paid for contract rights. Ms. Hagley, my biggest concern with your position is that you will give them no value. The market tells us that everything has a value. And I'm wondering how you can justify giving no value to something as important as the right to elect the board which determines the entire direction and policy of the insurance company. How can that have no value whatsoever? Well, our position actually in this case is that it had a de minimis value with respect to the right to vote. Is that a change from what you argued before the trial court? No. No, it's not. What our expert said is that a de minimis value best stated is zero. But the initial question in this case is not necessarily value, but its basis. What were they required to pay? And it's clear in the case law that even a property that you acquire either has value or becomes valuable later, when you're talking about basis, the question is what were you required to pay? And the life insurance company in this case, which is what Sun Life testified to as well as our industry expert, which said that mutual life insurance companies... Some part of the price of acquiring that insurance policy and then renewing the premiums on a regular basis would have to have been the right to declare the policy, wouldn't it? That voting rights. For the voting rights, that was not the testimony in this case, and that is not the way Congress treats it. Under the code, all the premiums from the corporation's point of view are treated as income. No portion is treated as non-taxable capital contributions or money coming in being exchanged for stock under 1032, which would be non-taxable. And from the policyholder's point of view, all of the premiums are treated as being paid for the contract rights. Under Section 72, the policyholders are entitled to apply all of the premiums, all aggregate premiums against the contract rights. They don't have to carve out any for the voting. By contract rights, I take it you're referring to the risk assumption of death before enough premiums are paid. You're not including contract rights such as those suggested by Judge Rader, which includes the right to vote. Wasn't that part of the contract? That was not part of the contract. The contract's in the record. The contract doesn't say anything about voting and liquidation rights. What the record evidences is those rights come about by operation of law if you get a participating policy. By contract rights, you mean the contract right to receive the premium upon the death of the insured. The contract right is the right to receive the insurance proceeds. The insurance proceeds when they're received by reason of death are not taxable. The contract rights that would be taxable under Section 72 are the cash surrender value and the policyholder dividends that are paid. The policyholders are entitled, if they receive those distributions under the contract, to apply all aggregate premiums against those contract rights. I want to point out the IRS's position on this is consistent with that of other taxing authorities from other countries. That's in the record. The U.K., Canada, Philippines, Ireland all say that demutualized stock have zero basis. The government is not on appeal arguing as they did below that the open transaction doctrine is dead, correct? In fact, you've accepted the very thorough opinion of Judge Allegra, which makes clear that the open transaction doctrine, while infrequently applied, certainly continues to exist. Am I right? That is correct. It shouldn't apply in this case, but not that it's a defunct doctrine. That's correct. And I think Judge Allegra actually sort of mischaracterized our position. I saw that in the opinion that you said that the government said it is dead. I went back and read the reply briefs and our summary judgment proceeding also in the trial, and we said it's rare and unusual circumstances and didn't apply here, but that's correct. There is an open transaction doctrine. We respect that, but it's only in the rare and extraordinary circumstance that it should be applied when it's impossible to either determine value or to allocate basis. But Judge Allegra was pretty faithful to that characterization of the doctrine, wasn't he? At the end of his opinion, he says it's unusual and unique, and he gives very clearly the impression that he is forced by the inability to give value to use the open transition doctrine. That's absolutely correct. His articulation was true to how it's been articulated by this Court's predecessor, but the evidence in this case doesn't support applying the open transaction doctrine. What he disregarded were the critical concessions from the trust expert, Cole, who said two things on this point. He said, number one, it was possible. It certainly was possible, he said, to estimate the value of the voting liquidation rights as of 1990. He simply chose not to. He simply chose not to make that estimate. The other thing he said is that if there's evidence in the record that the premiums for policy with the rights and the premiums for comparable policy without the voting- Just a second. It's true that Sun Life, by agreement of the Board, decides not to set a value on that, but isn't that your burden? Don't you have to come in and produce some evidence of the value of this? No, I'm sorry. The taxpayer bears the burden on valuation. Unless there's no way to value it. They're presenting the point that they can't value it, and indeed they've made a decision not to. Don't you have to come up with some? Don't you have to put that issue into dispute with something? To point to that, the trust expert said that it could be valued, that it could have been estimated, and that's all valuation requires. It doesn't require an exact number, just a reasonable estimate. And Cole said he could have done that. He chose not to. He also said that if there were evidence of the record which is- Their position is consistent with the open transaction doctrine. They're saying we could try, but it's impossible to value. And you kind of dismiss it all and say, well, we're not going to give any value to it. So you could have put that issue into contention by saying, okay, it has some value. We'll give it X. And you don't even try that. I take it your argument is that it's not your burden to put a particular value on it, but it's only your burden to say that they're wrong when they say it has no value. That is correct. Is that how you want to avoid the dilemma that Greg Rader is giving you? That is correct. And, again, the trust expert said that it was possible to value, that he could have estimated. He said it wouldn't have been accurate. I mean, it's always possible, right? I could estimate your weight from here probably. I can't imagine I'd get it anywhere near right. And I think that wasn't he saying that none of these valuation methods would make it at all accurate. It would just be too wildly inaccurate. No, he didn't say that. And he also said that if there were evidence of the record that the value of- was similar to the premiums on the policy without the rights, that that would demonstrate a de minimis value. And the government put in that evidence- Why don't you point me to where you say that he said that it was possible to do this and he just chose not to in the record? Sure. Let's see. I think you're going to be on 1157 of the appendix or thereabout. Let's see. And also on- let's see. Cole said possible- 1158 and 1324 is what I have. And I hope those numbers are accurate. Let me see. 1158. He said- There certainly would have been stock- okay. The question from the court, if somebody had said to you that the task was not to decide whether the value was discernible, but to determine the value as of some date in 1990, what would you have done in terms of a process then? Would you have just said can't do it? Witness, this is Cole, said, I don't know if we would have said that. There certainly would have been stock insurance companies doing business at that time. One probably would have studied the characteristics of the pricing on stock insurance company policies that are similar and compared it to the mutual insurance and perhaps used that data in coming up with a difference between the two. And I think on 1324 he had similar testimony about the ability to estimate. But the bottom line is the government did put on evidence that the pricing of the policies didn't change once the voting and liquidation rights was removed. And under the analysis that the Ninth Circuit endorsed in Gladden and that Cole seems to recognize in his testimony, the right should be deemed to have only a de minimis value. I'm looking at Cole's testimony at 1148. And he says- Yeah, I know. But I went back a little earlier where he says there are methods. But I conclude that the use of these methods is not applicable. That's right. So he's saying there are methods to do it. But he's saying they don't apply here because he can't get a good estimate. He said they shouldn't apply here because the property- That's different than saying that he conceded it had no value. He's saying it does have value and there are methods of getting it. He just doesn't think they apply here. And the reason why is, he said, because the property was not separable when acquired. And we know as a matter of law from cases like Paulson, from Gladden, that that's not accurate as a matter of law. You can value property. It may be difficult, but you can value property that was joined together when acquired. The open transaction doctrine assumes that the transaction can be closed at some later time and that we will then know the value of those parts. Is that right? That's correct. Now, the government seems to be arguing that the trouble here is the insurance proceeds are not taxable. And so we will never have closure brought on this open transaction. Well, I wonder if that's quite correct. Is it not the case that there can be a market in the insurance policy as before the proceeds actually are realized? That is, during the lifetime of the insured, isn't there some market for such policies? Well, there's no evidence in the record that there is such a market, but I can see your point that there could be. And we're not saying that it never would close. We're just saying that it typically wouldn't close. As counsel for the trust recognized in an article that was attached to the complaint in this case on A54 in the record, life insurance quotas normally held until death. And so the court just failed to address why this would be an appropriate case to apply the open transaction doctrine aside from the fact that it's our contention that it was conceivably possible to estimate the value. So your argument as a trial judge didn't give sufficient weight to that issue? Correct. That's one of our points. Okay. I'm going to save your rebuttal time, Ms. Hagley. Thank you. Thank you. Mr. Rabi? It's Rabi, Your Honor. Rabi, excuse me. No problem. It's usually people want me to be Rabi Burgess, so as long as we get the names in order, I'm usually pretty happy. Okay. May it please the court, my name is Burgess Rabi, and I am here today representing the appellee in this matter, the Seymour P. Nagan Irrevocable Trust. Mr. Fisher is the trustee. The government has made a number of assertions in this matter, most of which seem to be irrelevant. Government has focused or has argued strenuously that the application of the open transaction doctrine here would fly in the face of the way that mutual insurance companies are taxed and the statutory structure for that. Insurance company taxation is a unique and narrow area of tax law. It applies to the insurance company. It is not a matter that should affect the taxpayer in this case who bought a life insurance policy that included with it valuable voting rights, valuable dividend rights, valuable motivation rights. How do these voting rights have value if the premiums were the same before and after? Well, Your Honor, the premiums were, the statement in the record that the premiums were the same before and after was before demutualization and after demutualization. So after the rights were severed and the trust or the other owners had already received payment for those rights in the form of stock. So you're comparing apples to oranges. You're talking about a company that is owned by the policyholders. Policyholders are the only ones who have any rights to the liquidation proceeds or to elect the board of directors to determine the dividend rate and a company where the policyholders have won the right to vote for one third of the directors. So you're comparing essentially premiums on insurance policies issued by two different companies. Counsel, I would have thought maybe your response to Judge Rader would have been maybe a little simpler. It would have been something like I'll pay you a dollar a week for the next 52 weeks to use your patented invention for 10 days. Well, you know, I'm still paying you a dollar a week later on, but I'm just sort of amortizing it over a longer period. Here you had the payment for rights and then the rights were paid out, but you were sort of contracted in over the long term to pay the same amount. That is another way of looking at it. And, of course, we are talking about the insurance contract as if it's purchased one time and just a series of payments being made. But these aren't decisions being made each month. How much should I pay for what I'm getting today? Well, Your Honor is absolutely right, but this also is a decision being made every six months. This policy, had it continued, would have been renewed on a six-month basis. These were semi-annual premiums. So rather than treating this as just one policy, which the government would like to argue is, it's actually a decision made in 1990 to buy the policy and six months later to renew the policy by paying another premium. So there is a series of decisions being made, which I think also affects this decision. The premium is not renegotiable at every six-month period, right? No, it is not. So the premium amount is going to be consistent over the life of the policy. Yes, that is true. But the trust could have made a decision to purchase a different policy at the time based on the diminution value. Why can't it be valued? It can't be valued because there's really no market for these rights. They are inherent and inseparable. They just sold for $32,000. Prior to the demutualization, there was no market for the rights. Because you could not have these rights unless you held the policy. And by holding the policy, you receive these rights. They are inextricably bound with the policy itself. So you couldn't segregate these rights off prior to the demutualization. That's why the demutualization event is the critical event in this case. But if I understand right, you have one vote no matter how big or small your policy is. So you're paying vast amounts for the insurance. It doesn't seem like you're paying much for your one vote. I can have a $5 policy or a $5 million policy. Am I correct? I get one vote? That is correct, Your Honor. Then help me with valuing the $5 versus the $5 million. Well, there are other rights, too, Your Honor. You have a right to the dividends that the board determines. You have a right to the liquidation proceeds in the event of liquidation. Your Honor is correct. That's part of the process of trying to determine the value of these rights that makes it difficult to determine. What is the value of the rights? And we're not asserting that the rights have a specific value. What we're saying is part of the separation of those rights and the demutualization, they couldn't be valued separately from the policy. And, therefore, the amounts that were paid for the policy Well, why? I mean, I understood your expert is saying simply because they weren't separable. Is there any other reason he gave for it? Let me give you another example. So I hire a nanny, and I want her to live in my house. I'm going to give her room and board. I'm not holding a restaurant here. I'm not willing to serve anybody dinner every night of the week, just my nanny. But I could certainly tell you, even though it's inseparable, I'm only offering room and board to this one person, how much the value of the board is and how much the value of the room is. It's inseparable, but I could certainly still come up with an amount that it's worth. But if you were a gourmet chef who made a unique dish that was not available anywhere else, it might be more difficult to value that room and board. Because in this case, you're talking about purchasing it. But I didn't understand your expert to give that reason. And if I'm wrong, I want you to show me where in his testimony. I understood his reason to be based simply on the lack of separability. If there's something unique and different about these rights that was presented factually in the record, then show it to me. But now you're arguing about the unique dish seems like it might be only one in the record. Your Honor, we are arguing that the ownership of Sun Life, Sun Life is a unique company. It's not Northwest Mutual. It's not another insurance company. It is Sun Life. It has its own operating history, its own investment history. What did your expert say? I want the facts. What did your expert say was the reason that he could not value it? Because they were not separable. The stuff you're saying now is good argument. But none of that was the testimony that the expert gave. With regard to the valuation of an asset, it's not separable. That's on 1148. Yes, Your Honor. He did say it. But the asset is the ownership rights in Sun Life. It's not the ownership rights in general in any insurance company. It's the ownership rights in Sun Life itself. And those were not separable. There was no marketplace for ownership rights in Sun Life. I want to come back to the question that was raised earlier that still puzzles me, but I'm not sure I'm quite satisfied with your answer to it. The insured paid the same premium before and after demutualization, right? That was the testimony, yes, sir. That was the testimony. Now, the difference that the insured's rights were between before and after was after the insured no longer had voting and liquidation rights. The question then is what market price could reasonably be put on those voting and liquidation rights other than zero? Let me put this question to you. Let's assume that you are selling your house for a million dollars. You advertise it for sale on the market for a million dollars. And let's assume you say, I offer it for a million dollars furnished or unfurnished. Same price. What do you suppose the market would say you have valued your furnishings at? I would say you valued them at zero. Because you're offering exactly the same property for the same price with or without those particular features, and so you must be valuing those features at zero. It seems to me if you're paying the same premium for exactly the same contract rights, you're coming out in exactly the same place. But, Your Honor, at the same time, the furniture, if you did that hypothetical and you sold the house with the furniture, you would be entitled to offset against your purchase price in determining your gain, both the purchase price for the house and the purchase price for the furniture. You're saying my basis would be different. Your basis would be different, point one. Point two, those aren't the facts. They weren't worthless rights. It is very clear from the marketplace they were worth over $30,000 to the trust. That is the amount that was paid to them. The way that that $30,000 didn't reflect simply the voting liquidation rights, that $30,000 also reflected accumulated surplus that the company had, which is what all that demutualization was about anyway. I have a slightly different question for you, sir, and I'm puzzled by this. What's at stake in this case, as near as I can tell, is a $5,000 tax? For the trust, yes. For the trust. With all due respect, and I don't demean $5,000, particularly given salaries that judges get these days, but in terms of the kinds of cases we get up here and what I assume lawyers get paid these days, $5,000 strikes me as a curious fight for a tax refund. Is there something else I'm really asking? What's at issue? What's really at issue other than the $5,000 in this case? What am I missing? The issue is the Internal Revenue Service has made, without any real analysis, has made a decision that these rights are worthless. Are you up here on a matter of principle? Primarily a matter of principle, Your Honor. There's no string of cases sitting back there somewhere? There are a number of demutualization cases. I have no other cases pending. Okay. Thank you. Your Honor, we believe that Judge Allegra did a comprehensive view of the open transaction doctrine, listened to the evidence, heard the experts, asked his own questions. Mr. Cole's discussion of whether he could estimate value, which was only an estimate, he makes that clear, did not take, he stated he would have to make a number of assumptions, he'd have to know what assumptions were made to come up with a value. That was an answer to a question posed by Judge Allegra himself. We believe Judge Allegra did a comprehensive review of the open transaction doctrine and reached the correct decision in this case, and we would ask that it be affirmed. Thank you. Thank you, Mr. Raby. Ms. Hagley, you have almost two minutes remaining. Counsel for the trust. The lower court went through marketability, went through each of the various methods that are typically used to value assets, and found each of them inadequate for various reasons. Isn't that a pretty thorough justification for the open transaction doctrine? Well, two things. Number one, the court misstated our expert's testimony when it was going through the analysis. It talked about Penny saying he wasn't able to use the market method, and Penny said that he could, and then he looked to the comparables of that the pricing did not change for the premiums before demutualization and after demutualization. Also, it ignored the testimony that I brought up before about the trust expert saying that it would be possible to estimate, to come up with some estimate, and he didn't suggest that it would have been an unreasonable estimate. I think if you're reading this, that it would have been a reasonable estimate. But again, just getting back to our first point, the question in this case is not whether the value of the voting liquidation stock was worthless or not when acquired, but whether the trust was required to pay anything for those rights, and counsel for the trust has not, doesn't respond to our point, that what the IRS's position is, is that the premiums are paid for the contract rights. They're not paid for the voting liquidation rights, whatever their value is or not. It talks about the value being $32,000 in 2000, but that's because the regulators decided that the entire surplus, which had been built up for generations of policyholders that were no longer around, was going to be divvied up to the few policyholders who were around on the eligibility date. So you're focusing on the absence of any showing of a basis in those? That's correct. The demutualization benefit is not a return of the premiums. It's undisputed in this case that over 90% of that surplus had been contributed by prior policyholders and that a good third of the policyholders who were going to receive a demutualization benefit had paid nothing. Now there's some indication, and I have the same problem because I'm not a tax lawyer, that the trial judge kept spilling between basis and value. That's correct. Is that a fair return? That's our argument, the completed basis and value. Your own treasury regulation, 1.61-6A, says that apportionment is appropriate and that the part's basis is not what the taxpayer actually paid for it, but rather the fair market value at the time it was acquired. So I guess I don't find the government's position supported by any law, your notion that they have to prove which of their dollars specifically went for this. And it seems to me to fly in contrast to your own treasury regulation. So why don't you tell me more? Well, the treasury regulation assumes that some portion of the cost has been paid for that right and it's supported by case law like better beverages, plow realty, and the fact that you have something, you've acquired something valuable, doesn't mean that you were paid something for it, which is what the basis is. Better beverages doesn't say anything about how the taxpayer was required to pay something for it. Well, what better beverages was. What you're arguing right now, it doesn't seem to me is supported by any law. It's a new position, and maybe it's the right position, but it certainly is not a position grounded in precedent, I don't see. So tell me if I'm wrong. Show me what cases you think do. I think better beverages, it is grounded in that. The taxpayer in that case had acquired a company, so a number of items for a lump sum, and it was trying to attribute some of the basis to one of the pieces, covenant not to compete. And the testimony in that case was that the seller had not required the buyer to pay anything for that covenant not to compete. So even though it was valuable to the buyer, it had not been charged by the seller, and therefore the basis was zero. Thank you, Ms. Hagley. We appreciate your efforts here. And our next case is the force group versus.